Document Number Case Number
1901      05–C–0575–C
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
08/10/2006 11:36:41 PM CDT

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

INNOGENETICS N.V.,
a Belgian Corporation,

                    Plaintiff,

v.                                              Case No. 05-C-0575-C

ABBOTT LABORATORIES,
an Illinois Corporation,

                    Defendant.

## INNOGENETICS' MOTION *IN LIMINE* TO EXCLUDE
## THE TESTIMONY OF DR. TAI-AN CHA AND
## ANY EXPERT TESTIMONY OF DR. THOMAS WHITE

### MOTION

Plaintiff Innogenetics N.V. hereby moves, pursuant to Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1) and Federal Rules of Evidence 402 and 403 for an order *in limine* barring Abbott Laboratories from presenting any testimony from Dr. Tai-an Cha and any expert testimony from Dr. Thomas White.

### MEMORANDUM OF POINTS AND AUTHORITIES

I.      **Factual Background**

Dr. Tai-an Cha is one of a named group of authors of three prior art references asserted by Abbott, a 1991 article in the *Journal of Clinical Microbiology*, a 1992 article in the *Proceedings of the National Academy of Sciences*, and a PCT application. Dr. Thomas White is the chief scientific officer at Celera Diagnostics. In 2002, Abbott Laboratories and Celera Diagnostics entered a long-term strategic alliance partnership wherein, among other things, Celera manufactures and Abbott distributes the HCV genotyping products accused in this

lawsuit. A brief recitation of the parties' disagreement regarding the propriety of presenting Dr.

Cha and Dr. White as expert trial witnesses is instructive:

- On April 10, 2006, Abbott disclosed Dr. Tai-an Cha on its Proponent Expert Witness Disclosures "[p]ursuant to Rule 26(a)(2)(A)." In those disclosures, Abbott represented that "Dr. Cha worked extensively in the field of HCV genotyping in the early 1990s . . . ," and indicated that "Dr. Cha may offer testimony related to his scientific work and his publications and patent applications in the field of HCV genotyping." Declaration of Lissa R. Koop in Support of Innogenetics' Motions *in Limine* ("Koop Decl.") Ex. 5 (Abbott Laboratories' Proponent Expert Witness Disclosures, dated April 10, 2006), at 2. Dr. White was not disclosed as an expert witness. *See id.*

- On that same day, counsel for Innogenetics stated its objection to Dr. Cha's designation, as Dr. Cha had not been deposed by any party or submitted an expert report. Koop Decl. Ex. 6 (Letter from D. Anstaett to G. Gross, dated April 10, 2006).

- The next day, counsel for Abbott responded that Dr. Cha did not need to submit an expert report because Dr. Cha had not been retained or specially employed by Abbott to provide expert testimony. Abbott then asserted that "Dr. Cha's testimony about his work relating to HCV genotyping in the early 1990s may include opinions about that work based on his scientific, technical or other specialized knowledge . . . ." Koop Decl. Ex. 7 (Letter from G. Gross to D. Anstaett, dated April 11, 2006), at 2.

- On April 12, 2006, counsel for Innogenetics maintained its objection to the designation. Koop Decl. Ex. 8 (Letter from D. Anstaett to G. Gross, dated April 12, 2006).

- On April 14, 2006, counsel for Abbott persisted in its position that no expert report was required and responded that it did "not expect that Dr. Cha will testify 'generally' about his work in the field . . .," but rather that "Dr. Cha may present evidence at trial based on his personal and technical knowledge" about three asserted prior art references. Specifically, Abbott stated that "[w]e anticipate that Dr. Cha may testify about the prior art he created, namely his 1991 and 1992 articles in the *Journal of Clinical Microbiology* and the *Proceedings of the National Academy of Sciences*, respectively, and his PCT application." Koop Decl. Ex. 9 (Letter from G. Gross to D. Anstaett, dated April 14, 2006).

- On April 17, 2006, counsel for Innogenetics further objected to the testimony as to this more limited topic, on the additional grounds that an author's interpretation or supplementation of what her publication discloses is irrelevant and potentially misleading. In addition, counsel for Innogenetics sought information relating to Abbott's contacts with Dr. Cha, whether Abbott intended to call Dr. Cha as a trial witness, what arrangements Abbott had made with Dr. Cha (e.g., to pay for her time or expenses), and whether and when Abbott intended to depose Dr. Cha. Koop Decl. Ex. 10 (Letter from D. Anstaett to G. Gross, dated April 17, 2006).

- Counsel for Abbott never responded to these inquiries, but, on July 31, 2006, named Tai-an Cha, the author of prior art asserted by Abbott, on the list of witnesses it expected to present

at trial.  Koop Decl. Ex. 11 (Abbott Laboratories' Witness List, dated July 31, 2006).  Dr. White was also included on the list of witnesses Abbott intends to call.  *See id.*

## II.    Dr. Cha Should Not Be Permitted To Testify

Dr. Cha's proposed testimony concerning the prior art is necessarily expert testimony, but Dr. Cha has not submitted an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B).  On this basis alone the Court should prohibit any testimony from Dr. Cha. Alternatively, Dr. Cha's testimony should be excluded pursuant to Fed. R. Evid. 402 and 403 because her testimony is not relevant or, even if relevant, its probative value (if any) is substantially outweighed by the unfair prejudice it would cause Innogenetics, the likelihood it would mislead the jury and because it is needlessly cumulative.

### A.    Dr. Cha's Proposed Testimony is Necessarily Expert Testimony Which Abbott Has Failed To Disclose In An Expert Report

As discussed above, Abbott's proponent expert witness disclosures identify Dr. Cha as a witness who will provide expert testimony in this litigation.  *See* Koop Decl. Ex. 5 , at 2.  More specifically, Abbott's First Amended Rule 26(a)(1) Initial Disclosures (dated July 28, 2006) list Dr. Tai-an Cha as a witness who will provide testimony "relating to prior art,"  Koop Decl. Ex. 12, at 3, that is, "the prior art he created, namely his 1991 and 1992 articles in the *Journal of Clinical Microbiology* and the *Proceedings of the National Academy of Sciences*, respectively, and his PCT application."  Koop Decl. Ex. 9, at 2.  Accordingly, as Abbott's own statements and the relevant case law make clear, Dr. Cha will be testifying as an expert witness – not a fact witness – because any discussion of the prior art will rely necessarily on Dr. Cha's "scientific, technical or other specialized knowledge" and require an explanation of facts not within the grasp of the average juror.  *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 n.2 (7th Cir. 2004) (citing Fed. R. Evid. 702 and noting that even occurrence witnesses are "providing expert

testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge[.]'"); *see also Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2006 U.S. Dist. LEXIS 6572, at *4 (W.D. Wis. Feb. 21, 2006) ("The fact that [an expert's] testimony consists of facts rather than opinions does not mean it is not expert testimony. Rule 702 does not limit expert testimony to opinions[.] . . . the relevant inquiry is whether the facts are within the grasp of the average juror.").

Although Abbott wishes to elicit expert testimony from Dr. Cha at trial, Abbott never produced a written expert report from Dr. Cha.  In meet-and-confer correspondence, Abbott justified its refusal to provide an expert report from Dr. Cha on the basis of its reading of Fed. R. Civ. P. 26(a)(2)(B), which provides in relevant part:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.

That is, Abbott asserts that Dr. Cha "is an independent witness" who has "not been retained or specially employed by Abbott to provide expert testimony in this case," thereby freeing it from the obligation to produce an expert report detailing her proposed testimony.  *See* Koop Decl. Ex. 7, at 2.[1]

Abbott's bare assertion that it has not "retained or specially employed" Dr. Cha to provide expert testimony in this case cannot be squared with the numerous cases that have considered the meaning of that phrase in the context of Fed. R. Civ. P. 26(a)(2)(B).  One of the

---

[1] When Innogenetics posed a series of questions to Abbott seeking information on any interactions it has had with Dr. Cha regarding this litigation, in order to probe the basis for Abbott's assertion of "independence," Abbott never responded.  *See* Koop Decl. Ex. 10 (asking whether Abbott had been in contact with Dr. Cha concerning this litigation, had made arrangements to pay for her time or expenses, or intended to depose her or call her as a trial witness).

first cases to consider this issue following the 1993 amendments to the Federal Rules is *Day v. Consolidated Rail Corp.*, No. 95 Civ. 968 (PKL), 1996 U.S. Dist. LEXIS 6596 (S.D.N.Y. May 15, 1996).  In *Day*, the defendant failed to provide a report from one of its expert witnesses.  Like Abbott, the defendant in *Day* relied on its reading of Fed. R. Civ. P. 26(a)(2)(B) in arguing that no report was required because, among other reasons, the expert "was not 'retained or specially employed to provide expert testimony in this case.'"  *Id.* at *3-4.  The court disagreed, noting that

> [t]he principal difficulty with this argument is that even if the quoted language is perhaps susceptible to several alternative interpretations, the reading proposed by defendant would create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information.  The logic of defendant's position would be to create a category of expert trial witness for whom no written disclosure is required – a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulable policy.

*Id.* at *4 (citing, *inter alia*, 1993 Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee Notes).  The *Day* court observed that where a witness "is being called solely or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement." *Id.* at *7.  Nor does the mere fact that a witness is not being paid for her testimony mean that she has not been retained for that purpose – "the rules contain no disclosure exemption for experts who are not monetarily compensated." *Id.*

The *Day* court did recognize that no report is required from a limited category of experts "who are testifying as *fact* witnesses, although they may express some expert opinions – for example, treating physicians." *Id.* at *5-6 (emphasis added).  But as discussed above, Dr. Cha is being used by Abbott "solely or principally" to provide *expert* testimony.  Moreover, unlike a treating physician, whose observations and medical opinions may be directly relevant – indeed uniquely relevant – to issues concerning the patient's condition and injuries, the author of a prior

art article is not uniquely qualified to give an opinion as to what the article discloses to a person of ordinary skill in the art.[2]   Similarly, the fact that Dr. Cha authored several pieces of prior art cannot convert her into a fact witness or mean that she has had personal involvement in the particular facts of this case.   Indeed, the *Day* court's fear of creating a category of expert trial witness entirely exempt from the report requirement applies with particular force in patent infringement cases, where numerous pieces of prior art (which typically include multiple authors) are routinely at issue in any given litigation.   Abbott's reading of Rule 26 would allow an infringement defendant to call *anyone* who has been listed as an author on an allegedly invalidating piece of prior art to testify as an expert at trial about the details, scope or meaning of her publications or patent applications (or what she "did" but did not disclose, or what she intended to disclose), free of any obligation to provide a report detailing the opinions to be expressed at trial or the bases therefore.[3]

Numerous courts have followed the reasoning set forth in *Day* and endorsed its reading of Rule 26(a)(2)(B).   *See, e.g., KW Plastics v. United States Can Co.*, 199 F.R.D. 687, 688-90 (M.D. Ala. 2000) (relying on *Day* and holding that "the text of Rule 26(a)(2)(B) fairly supports the position that expert reports must be filed for corporate employees whose testimony is proffered solely or principally for their expert opinions"); *Minn. Mining & Mfg. Co. v. Signtech*

---

[2] Worse, such testimony has an unreasonable tendency to confuse and mislead the jury.  It takes little imagination to predict the problems that would likely ensue, *e.g.*, "what I intended to communicate by this is . . .," or "this sentence describes the work I did in the laboratory, which included . . . ."

[3] Indeed, a defendant would be free to list numerous authors of prior art as expert witnesses on the theory that they "*may* be used at trial," Fed. R. Civ. P. 26(a)(2)(A) (emphasis added), even if the defendant had not actually contacted the authors at the time it filed its initial expert disclosures.  This puts the plaintiff to the unenviable choice of, on the one hand, engaging in a significant discovery effort to subpoena and depose non-party witnesses who may or may not appear at trial, or, on the other hand, running the risk of learning the details of the prior art authors' expert testimony for the first time when she is on the witness stand.

*USA, Ltd.*, 177 F.R.D. 459, 460-61 (D. Minn. 1997) ("This Court joins in finding that requiring testifying experts to submit written reports is entirely consistent with the spirit of Rule 26(a)(2)(B)"); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, No. 02-12102-RWZ, 2006 U.S. Dist. LEXIS 43690, at *115-16 (D. Mass. June 28, 2006) ("To the extent that York will be testifying as a traditional expert, in matters involving scientific, technical or specialized knowledge, [plaintiff] is entitled to a report disclosing his opinions.").[4]  These courts are all justifiably concerned by interpretations of Rule 26(a)(2)(B) that would exempt broad categories of expert witnesses from disclosure requirements that are meant to "minimize unfair surprise and prejudice resulting from 'sketchy and vague' disclosure prior to trial." *KW Plastics*, 199 F.R.D. at 690.

It is undisputed that Abbott will call Dr. Cha solely or principally to provide expert testimony at trial, but Abbott never submitted an expert report detailing her proposed expert testimony.  Endorsing Abbott's tactic essentially forces opposing parties to create evidence (*i.e.*, by deposing "experts" on prior art to learn their undisclosed opinions) which it believes to be irrelevant in order to strike it. That cannot be correct and is expressly contrary to the purpose underlying the disclosure requirements of Rule 26(a).  Accordingly, the Court should exclude from trial any testimony by Dr. Tai-an Cha.

---

[4] *See also Prieto v. Malgor*, 361 F.3d 1313, 1318-19 (11th Cir. 2004) (citing *Day* with approval and noting that the *Day* court "found no justification for excusing any experts 'called solely or principally to offer expert testimony,' whether or not they were employees"); *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 27-28 (D. Conn. 2004) ("This court follows the interpretation of Rule 26(a)(2)(B) set forth in *Day*[.]"); *Ordon v. Karpie*, 223 F.R.D. 33, 35-36 (D. Conn. 2004) (noting that "the fact that [an expert] is not being compensated for his testimony also does not exempt him from the report requirement."). *But see Navajo Nation v. Norris*, 189 F.R.D. 610 (E.D. Wash. 1999) (declining to follow *Day*).  For its part, the Seventh Circuit has declined to "reach the disputed issue of whether an individual who serves in the capacity of 'treating physician' (or any analogous position) may nonetheless be required to submit a report under Rule 26(a)(2)(B)." *Musser*, 356 F.3d at 758 n.3.

**B.     Dr. Cha's Testimony Regarding What Her Prior Art Discloses Should Be Excluded Under FED. R. EVID. 402 or 403**

Additionally, Dr. Cha's testimony regarding the prior art should also be excluded pursuant to Fed. R. Civ. P. 402 or 403.   A prior art reference is limited to the disclosures contained in its four corners, and cannot be expanded by testimony regarding what the author meant to disclose, thought she disclosed, or what she was doing that she did not disclose.   *See, e.g., In re Omeprazole Patent Litigation*, No. M-21-18, M21-91, 2000 U.S. Dist. LEXIS 12695, at *22 (S.D.N.Y. 2000) ("[I]nsofar as the document is asserted to constitute prior art, [what] is more important is what the document actually discloses to one of ordinary skill in the art, rather than what the author may have subliminally intended.").   Because Dr. Cha's publications speak for themselves, her testimony will not tend "to make more or less probable any fact of consequence to the determination of the case," Fed. R. Evid. 401, and thus should be excluded pursuant to Fed. R. Evid. 402 as irrelevant.

Even if the Court concludes that Dr. Cha's testimony regarding her prior art publications is relevant, it should still be excluded pursuant to Fed. R. Evid. 403.   Although it is true that "[a]ll relevant evidence is prejudicial to at least one party," when "the risk of *unfair* prejudice substantially outweighs the probative value of evidence" a court may exclude the evidence under Rule 403.   *CERAbio LLC v. Wright Med. Tech., Inc.*, No. 03-C-092-C, 2006 U.S. Dist. LEXIS 11510, at *22 (W.D. Wis. Mar. 10, 2006) (emphasis in original).   Here, the probative value of Dr. Cha's testimony regarding her publications is substantially outweighed by the unfair prejudice that Innogenetics would necessarily suffer.   As discussed above, the probative value of Dr. Cha's testimony is low.   *See Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997) (citing Rule 403 and noting that where "evidence of marginal probative worth necessitates lengthy rebuttal, it imparts disproportionate weight to the issue.").   What matters is what the four

8

corners of the references disclose to one of ordinary skill in the art, *not* Dr. Cha's contemporary interpretation of what she disclosed 14 years ago, colored as it undoubtedly is by the passage of time and the permeable line between the content of her publications, on the one hand, and her knowledge of the field which informed her publications but did not actually appear in them, on the other.

Given the low probative value of Dr. Cha's testimony, the likelihood of unfair prejudice is substantial. As this court is already aware, the Cha PCT application is the primary reference cited by Abbott in its attempt to invalidate the '704 patent. Expert testimony concerning what it disclosed or did not disclose to a person of ordinary skill in the art circa November 1992 is hotly contested between Abbott's Dr. Patterson and Innogenetics' experts. The Cha publications, and in particular the Cha PCT application, are complicated scientific texts beyond the understanding of the average juror. The Cha PCT application alone runs to nearly 200 pages. Faced with a wealth of conflicting expert testimony on the topic, an average juror may be unfairly tempted to accept at face value whatever an author of these publications maintains is disclosed in them. Yet the author of a publication such as the Cha PCT application is not well-suited to testify reliably as to what the four corners of that publication disclosed to one of *ordinary* skill in the art. Well over a decade after its publication, it is highly unlikely that Dr. Cha can reliably separate what she disclosed, meant to disclose, thought she disclosed, or what she was doing that she did not disclose, all as understood by one of merely ordinary skill in the art in 1992. Moreover, she will have a likely bias toward taking credit for as much as possible. Accordingly, Dr. Cha's testimony, if permitted, would pose a serious risk of misleading the jury.

Finally, Rule 403 permits a court to exclude the "needless presentation of cumulative evidence." Abbott's expert Dr. Patterson has opined at length on the meaning of Dr. Cha's

publications to one of ordinary skill in the art.  *See* Expert Report of Bruce K. Patterson, M.D. Regarding the Invalidity of Innogenetics, N.V.'s U.S. Patent No. 5,846,704 (Dkt. No. 33) at 9-18, 21-31.  Abbott has listed Dr. Patterson as an expert it intends to call at trial.  Koop Decl. Ex. 11.  Any testimony Dr. Cha would provide concerning her publications would be cumulative of Dr. Patterson's testimony and particularly unfair given Abbott's failure to disclose, much less detail, Dr. Cha's opinions in an expert report pursuant to FED. R. CIV. P. 26(a)(2)(B).  Abbott had six months to prepare Dr. Patterson's report.  His qualifications, background and opinions are set forth therein.  They can be examined fairly.  None of this can possibly occur with the ad hoc testimony of Dr. Cha.  For all these reasons, Innogenetics respectfully requests that the Court exclude the trial testimony of Dr. Tai-an Cha.

### C.     If The Court Permits Dr. Cha To Testify, The Testimony Should Be Limited To The Content Of Her Publications

Although Innogenetics believes strongly that Dr. Cha should not be permitted to testify, if the Court disagrees, Innogenetics requests that her testimony be limited to the four corners of the three prior art publications identified by Abbott.  Abbott's first amended Rule 26(a)(1) initial disclosures (dated July 28, 2006) list Dr. Cha as a witness who will provide testimony "relating to prior art."  Koop Decl. Ex. 12, at 3.  This disclosure confirms Abbott's earlier representations that it did "not expect that Dr. Cha will testify 'generally' about his work in the field" but rather that "Dr. Cha may present evidence at trial based on his personal and technical knowledge" about three specific prior art references.  Koop Decl. Ex. 9 ("We anticipate that Dr. Cha may testify about the prior art he created, namely, his 1991 and 1992 articles in the *Journal of Clinical Microbiology* and the *Proceedings of the National Academy of Sciences*, respectively, and his PCT application.").  By its own concessions, therefore, Abbott is estopped from eliciting testimony beyond these limited categories.  Moreover, any effort to elicit testimony regarding

10

how one of ordinary skill in the art would understand the prior art publications or any other topics outside the four corners of the three prior art publications is legally impermissible, given Abbott's failure to submit an expert report from Dr. Cha.

### III.   Dr. White Should Be Prohibited From Providing Expert Testimony Because He Was Never Disclosed As An Expert

Abbott has also listed Dr. Thomas White, an employee of its strategic alliance partner Celera Diagnostics, as a witness whom it intends to present at trial.  During his deposition, Dr. White offered gratuitous, non-responsive and obviously well-rehearsed answers relating to validity and infringement of the '704 patent.  But in addition to not providing a report from Dr. White, Abbott did not list Dr. White on its proponent expert witness disclosures.  *See* Koop Decl. Ex. 5.  Indeed, Abbott has never informed Innogenetics of its intent to elicit expert testimony from Dr. White.  Innogenetics does not object generally to testimony from Dr. White in his capacity as a fact witness, but, in the event that Abbott intends to elicit expert testimony from Dr. White, Innogenetics requests a pre-trial ruling limiting Dr. White's testimony to his capacity as a fact witness and precluding any expert testimony, including testimony relating to validity and/or infringement of the '704 patent.  *See Frazier*, 2006 U.S. Dist. LEXIS 6572, at *4-5 (precluding inventor from providing expert testimony where he had not been disclosed as a potential expert witness); *CERAbio*, 2006 U.S. Dist. LEXIS 11510, at *2, *13 (prohibiting party from soliciting undisclosed expert testimony from its fact witnesses).

### CONCLUSION

For the reasons set forth above, Innogenetics respectfully requests that the Court grant its motion *in limine* to exclude all testimony from Dr. Tai-an Cha and to preclude any expert testimony from Dr. Thomas White.

Dated this 10th day of August, 2006.

Attorneys for Innogenetics N.V.

By: _____ */s/* John S. Skilton_____
John S. Skilton, SBN 1012794
Christopher G. Hanewicz, SBN 1034160
David L. Anstaett, SBN 1037884
Melody K. Glazer, SBN 1054204
Heller Ehrman LLP
One East Main Street, Suite 201
Madison, WI  53703-5118
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

Shannon M. Bloodworth
Heller Ehrman LLP
1717 Rhode Island Ave. NW
Washington, D.C.  20036
Telephone: (202) 912-2000
Facsimile: (202) 912-2020

Colin G. Sandercock
Proskauer Rose LLP
1001 Pennsylvania Avenue NW
Washington D.C.  20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899

DC 338211 v2
8/10/06 6:27 PM (40861.0008)