Document Number: 241
Case Number: 05-C-0575-C
United States District Court
Western District of Wisconsin
Theresa M. Owens
Filed/Received
08/16/2006 06:38:57 PM CDT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

INNOGENETICS, N.V.,

        Plaintiff,

vs.

        Case No. 05-C-0575-C

ABBOTT LABORATORIES,

        Defendant.

## ABBOTT LABORATORIES' BRIEF IN OPPOSITION TO INNOGENETICS, N.V.'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DR. TAI-AN CHA AND ANY EXPERT TESTIMONY BY DR. THOMAS WHITE

        Defendant Abbott Laboratories ("Abbott") submits this brief in opposition to Innogenetics, N.V.'s motion *in limine* to exclude the testimony of Dr. Tai-an Cha and any "expert" testimony by Dr. Thomas White, an employee of Celera Diagnostics.

## INTRODUCTION

        Innogenetics filed a motion *in limine* to exclude the testimony of Dr. Tai-an Cha on the grounds that Abbott did not produce an expert report from Dr. Cha under Rule 26(a)(2)(B), Fed. R. Civ. P., and because Dr. Cha's testimony is purportedly irrelevant and unfairly prejudicial to Innogenetics. However, as Dr. Cha was timely disclosed under Rule 26(a)(2)(A), Fed. R. Civ. P., as a witness who was not specially retained for this litigation, but who may offer opinion testimony that is scientific or technical in nature, Dr. Cha may offer such testimony at trial without having prepared and disclosed an expert report. Dr. Cha's testimony is highly relevant to the issue of invalidity, as Dr. Cha is the co-inventor or co-author of four prior art references that are involved in this litigation, some of which Abbott contends anticipates or makes obvious claims of

MADISON\727068.1

the '704 patent. Innogenetics cannot claim surprise or prejudice as it had ample notice and opportunity to subpoena the deposition of Dr. Cha, but chose not to do so.[1]

Likewise, the Court should deny Innogenetics' motion to exclude "expert" testimony from Dr. Thomas White because Dr. White is a fact witness. Dr. White is an employee of Celera Diagnostics, the company that manufactures certain of the accused products for Abbott. By virtue of his employment at Celera Diagnostics, and past employment at Roche Molecular Systems, Dr. White has personal knowledge of facts and events that are relevant to the issues in this case.

## ARGUMENT

### I. DR. CHA MAY OFFER OPINION TESTIMONY RELATED TO HIS PRIOR ART.

#### A. Dr. Cha Was Properly Disclosed As A Witness Under Rule 26(a)(2)(A), Fed. R. Civ. P., Which Does Not Require An Expert Report.

On April 10, 2006, Abbott disclosed Dr. Tai-an Cha in its Proponent Expert Witness Disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(A), asserting that Dr. Cha may be called to testify at trial, but specifically noting that Dr. Cha had "not been retained or specially employed to provide expert testimony in this case." 8/10/06 Declaration of Lissa Koop in Support of Innogenetics' Motions in Limine ("Koop Decl."), Exh. 5. In other words, Dr. Cha is not being paid for his testimony in this case. *See* Declaration of Gabriel S. Gross, ¶ 2. Dr. Cha is not an employee of Abbott. *See id.*, ¶ 3.

Thus, Abbott's use of Dr. Cha as an opinion witness at trial is permissible under to Fed. R. Civ. P. 26(a)(2)(A) and does not implicate the reporting requirements as set forth in Fed. R. Civ. P. 26(a)(2)(B). Rather, only those opinion witnesses who are "retained or specially employed to

---

[1] Innogenetics attempts to accuse Abbott of unfair play in an April 17, 2006 letter for not answering questions about Abbott's disclosure of Dr. Cha. *See* Koop. Decl., Exh. 10. Innogenetics' letter is a self-serving attempt to manufacture artificial prejudice. As is readily apparent from its letter and questions, Innogenetics should have posed certain of those questions to Dr. Cha himself in a deposition, and other questions prematurely sought information on Abbott's trial strategy.

2

provide expert testimony in the case" or "whose duties as an employee of [a] party regularly involve giving expert testimony" are required to provide written reports. Fed. R. Civ. P. 26(a)(2)(B).

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure provides "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Rules 702, 703 and 705 govern testimony given by experts and do not differentiate between experts utilized by parties pursuant to Fed. R. Civ. P. 26(a)(1)(A) or 26(a)(1)(B). Accordingly, by virtue of the plain meaning of the Rule, witnesses identified pursuant to Rule 26(a)(2)(A) are permitted to offer opinion testimony as set forth in Rules 702, 703 and 705.

On April 10, 2006, Abbott timely disclosed, in addition to Dr. Patterson, several witnesses who may offer testimony that is scientific or technical in nature given the subject matter of this lawsuit, including Gregor Leckie, Ph.D, Jane Smith, Ph.D., Michael Zoccoli, Ph.D. and Dr. Cha. (Koop Decl. Exh. 5.) Drs. Leckie and Smith are employees of Abbott. *See* Gross Decl., ¶ 4. Dr. Zoccoli is an employee of Celera Diagnostics. *See id.*, ¶ 5. Innogenetics objected to Abbott's disclosure of Dr. Cha because he "[was] not an employee of Abbott or Celera and ha[d] not been deposed by any party in this case." (Koop Decl. Exh. 6.) However, Innogenetics did not object to Abbott's disclosures of Dr. Leckie, Dr. Smith or Dr. Zoccoli, but instead reserved the right to call its own opinion witnesses, namely, Geert Maertens, Ph.D., Rudi Rossau, Ph.D., Ann De Clercq, Ph.D. and Catherine Grossett-Fournier. (*Id.*) Dr. De Clercq and Ms. Grossett-Fournier are not employees of Innogenetics. Moreover, given the disclosure of Dr. Cha on April 10, Innogenetics had ample opportunity to depose him prior to the close of discovery on July 28, 2006.[2]

Consequently, Innogenetics' objection to Abbott's disclosure of Dr. Cha is without merit.

---

[2]  Abbott pointed out this discrepancy in an April 11, 2006 letter to Innogenetics.

3

It did not object to Abbott's disclosure of Drs. Leckie, Smith and Zoccoli. And Innogenetics itself disclosed non-employee witnesses – Dr. De Clercq and Ms. Grosset-Fournier – who (at the time of the disclosure) may have offered opinion testimony that was scientific or technical in nature.

The Advisory Committee Notes interpreting Fed. R. Civ. P. 26(a)(2) and case law make clear that the requirement of an expert report does not apply to witnesses other than those described in subsection(B):

> [A]ll witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A); only those witnesses 'retained or specially employed to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B). The commentary to Rule 26 supports this textual distinction between retained experts and witnesses providing expert testimony because of their involvement in the facts of the case: a "treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Fed. R. Civ. P. 26, cmt. 1993 Amendments subdivision (a), para (2).

*Musser v. Gentiva Health Serv.*, 356 F.3d 751, 756-57 (7th Cir. 2004). *See also Applera Corp. v. MJ Research Inc.*, 220 F.R.D. 13, 18 (D. Conn. 2004) (noting difference among experts and stating that only a subset of experts are required to provide expert reports).

Some experts, like treating physicians, necessarily provide testimony of a scientific or technical nature, based on the nature of the claims of the case and their personal knowledge of relevant events. The same is true here. An author of a prior art reference is no different than a treating physician in this regard and the author's testimony is both relevant and useful. *See Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, 1998 WL 338106 (S.D.N.Y. June 25, 1998). Indeed, testimony from authors of prior art in patent cases is not uncommon. *See, e.g.*, *In re Omeprazole Patent Litig.*, 2002 WL 287785, *6, n.7 (S.D.N.Y. Feb. 27, 2002); *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 2004 WL 1724632 (S.D. Ind. July 29, 2004); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573 (Fed. Cir. 1997); *Ajinomoto Co., Inc.  v. Archer-Daniels-*

*Midland Co.*, 1998 WL 151411 (D. Del. Mar. 13, 1998); *Semi Conductor Energy Laboratory v. Samsung Electronics Co., Ltd.*, 4 F.Supp.2d 477 (E.D. Va. 1998).

In its motion, Innogenetics attempts to blur the distinction clearly delineated by Rules 26(a)(2)(A) and (B). In fact, Innogenetics' brief seemingly disregards Rule 26(a)(2)(A) altogether, because it presumes without basis that because Dr. Cha was designated as a witness who may offer opinion testimony that is scientific or technical in nature, then he must provide an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B).[3] Innogenetics is wrong, as Rule 26(a)(2)(A) and the advisory committee notes make clear.

Innogenetics' reliance on *Day v. Consol. Rail Corp.*, 1996 WL 257654 (S.D.N.Y. May 15, 1996), is misplaced because it is among a small handful of decisions in which trial courts have refused to recognize the category of expert witnesses for whom no report is required, reading out of existence the plain meaning of Fed. R. Civ. P. 26 (a)(2)(A). *See, e.g., Adams v. Gateway, Inc.*, 2006 WL 644848 (D. Utah Mar. 10, 2006) (criticizing *Day*). For example, in *Navajo Nation v. Norris*, 189 F.R.D. 610 (C.D. Wash. 1999), the court declined to follow *Day*, noting that its holding contravened the express language of the Federal Rules of Civil Procedure. The court in *Navajo Nation* correctly recognized that there are only two categories of experts for which reports are required: (1) non-employees of a party especially retained or employed for a particular case, and (2) employees of a party who regularly testify for their employer. *See id.* at 612-13.

Dr. Cha is not an employee of Abbott and he is not being paid for his testimony in this case. Gross Decl., ¶¶ 2-3. Abbott timely disclosed Dr. Cha on April 10, 2006. Innogenetics had

---

[3] Innogenetics' citation of *Musser* to make this point is misguided and misleading. The court in *Musser* unequivocally stated that experts can be designated under both Fed. R. Civ. P. 26(a)(2)(A) and (B), but only those experts identified under Fed. R. Civ. P. 26(a)(2)(B) are required to file an expert report.

Moreover, this Court's holding in *Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2006 U.S. Dist. LEXIS 6572 at *4 (W.D. Wis., Feb. 21, 2006) did not address the issue. In *Frazier*, the Court struck the testimony of an expert witness *who was never disclosed* pursuant to Rule 26(a)(2). *Id.* at *4 ("[P]laintiffs should have identified him as a potential expert witness.").

5

over three months to depose Dr. Cha. Innogenetics never sought to depose Dr. Cha. Accordingly, its current effort to exclude testimony from Dr. Cha should be denied.

### B.     Dr. Cha's Testimony Is Relevant.

Dr. Cha's testimony regarding four prior art references involved in this case – his 1991 and 1992 articles in the *Journal of Clinical Microbiology* and the *Proceedings of the National Academy of Sciences*, respectively, Cha PCT Application, and the '693 patent – is relevant to the issue of invalidity. In short, Dr. Cha will describe the nature of his work as reflected in four prior art references, explain his experiments, analyses and results and generally inform the jury about his work.

Despite Innogenetics' contentions to the contrary,[4] the testimony of an author of prior art is highly relevant and has been deemed admissible testimony by several courts, including the Federal Circuit, and at least one district court within the Seventh Circuit. *See Monarch Knitting Mach.*, 1998 WL 338106 at *3 (stating "interpretations by authors of prior art references are relevant and useful in patent litigation"); *In re Omeprazole Patent Litig.*, 2002 WL 287785, *6, n.7 (S.D.N.Y. Feb. 27, 2002) ("fact witnesses who are skilled in the art … are competent to testify concerning prior art documents"); *Eli Lilly & Co.*, 2004 WL 1724632, *3 (S.D. Ind. July 29, 2004) (authors of prior art listed as trial witnesses); *Gambro Lundia AB.*, 110 F.3d at 1579 (Fed. Cir. 1997) (admitting testimony of author of prior art); *Ajinomoto Co., Inc.*, 1998 WL 151411, *9-10 (D. Del. Mar. 13, 1998) (admitting testimony of author of prior art).

As Abbott's counsel explained in correspondence with Innogenetics' counsel, "Dr. Cha is an independent witness whose publications and patent applications from the early 1990s are relevant to issues in this case. Indeed, [Dr. Cha's PCT Application] was specifically identified in

---

[4]     In his letter dated April 17, 2006, Innogenetics' counsel stated, "[w]e know of no authority that would allow Abbott to call the author of a piece of prior art to interpret, explain or supplement what the publication itself discloses to a 'person of ordinary skill in the art.'" (Koop Decl., Exh. 10.)

Abbott's counterclaim. Dr. Cha's testimony about his work related to HCV genotyping in the early 1990s may include opinions about that work based on his scientific, technical or other specialized knowledge, and that is why he was disclosed pursuant to Rule 26(a)(2)(A)." *See* Koop Decl., Exh. 7. Abbott further clarified Dr. Cha's role, stating, "[w]e do not expect that Dr. Cha will testify 'generally' about his work in the field, as you suggest. ***His relevance to this case is clear and it is limited.*** He created three central prior art references, one of which even Innogenetics has described as the closest prior art. These references are cited extensively in the relevant file wrappers, and the 1992 PCT Application [] is explicitly identified in Abbott's counterclaim. ***Dr. Cha may present evidence at trial based on his personal and technical knowledge about these three references.***" *See* Koop Decl., Exh. 9 (emphasis added).

Innogenetics also contends that any probative value of Dr. Cha's testimony is outweighed by the "unfair prejudice that Innogenetics would necessarily suffer" and his testimony should be excluded pursuant to Rule 403. *See* Innogenetics' Br. at 8. First of all, as to Innogenetics' contention that the probative value of Dr. Cha's testimony is "low," Innogenetics offers nothing more than the trope that his "documents speak for themselves." Inno. Br. at 8. If Innogenetics were correct, litigants could never use witnesses to explain the significance of documentary evidence to a jury (other than to establish foundation).

As to Innogenetics' claim of undue prejudice, it argues that the jury might be misled because Dr. Cha might not be able to recall reliably what he disclosed or "meant to disclose" in his work. Innogenetics' "prejudice" argument is a non-starter – its concerns about Dr. Cha's memory or any bias he might have toward his own work is the stuff of cross-examination (and could have been explored at a deposition).

7

Dr. Cha is an independent, third party witness who is not being compensated for his testimony. *See* Gross Decl., ¶ 2-3. The jury will hear directly from a prior art author, who is probably the most qualified person to describe his work. The jury will hear from the parties' retained experts about what Dr. Cha's work disclosed to the person of ordinary skill in the art. Apparently, Innogenetics' real concern is that Dr. Cha's testimony might by more credible than its highly paid experts, but that is not a legitimate reason to exclude Dr. Cha's testimony.[5] Innogenetics' claims of undue prejudice are unfounded.

## II.     THE TESTIMONY OF DR. THOMAS WHITE IS ADMISSIBLE.

As described above, Dr. White is an employee of Celera Diagnostics, the company that manufactures certain of the accused products for Abbott. Dr. White has worked in the field for many years. Before Dr. White began working at Celera, he worked at Roche Molecular Systems for eleven years. Through his work, Dr. White is very familiar with the technologies involved in this case and, moreover, has personal knowledge of facts and events that are relevant to the issues in this case. To the extent Dr. White's "fact" testimony may be scientific or technical in nature, that circumstance results from the nature of this case and the products involved. Since Innogenetics does not object to fact testimony from Dr. White, *see* Inno. Br. at 11, this portion of its motion appears moot.

---

[5]     Innogenetics also seeks to exclude Dr. Cha's testimony on the basis that will be cumulative of Dr. Patterson's testimony. As explained in the text, Dr. Cha's testimony will be limited to his work and he will not be able to offer opinions on, for instance, whether the Cha PCT Application anticipates claims of the '704 patent. Accordingly, there will be little, if any, cumulative testimony.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Innogenetics' motion *in limine* to exclude the testimony of Dr. Cha and any "expert" testimony from Dr. White.

ABBOTT LABORATORIES

Dated this 16th day of August, 2006   By:       s/Gabriel S. Gross    
Eugenia G. Carter
Jeffrey A. McIntyre
Gabriel S. Gross
Kelly M. Dvorak
*Counsel for Defendant Abbott Laboratories*

OF COUNSEL

Whyte Hirschboeck Dudek S.C.
One East Main Street, Suite 300
Madison, Wisconsin 53703-3300
tel: (608) 255-4440
fax: (608) 258-7138