UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INNOGENETICS N.V.,
a Belgian Corporation,

    Plaintiff,
    v.

ABBOTT LABORATORIES,
an Illinois Corporation,

    Defendant.

Case No. 05-C-0575-C

---

## INNOGENETICS' RESPONSE IN SUPPORT OF PLAINTIFF'S APPLICATION TO TAX COSTS

---

Abbott puts forth no objection to many of the categories of costs for which Innogenetics seeks reimbursement. Therefore, pursuant to this Court's order, "[i]f no opposition is filed, costs will be taxed in accordance with the Bill of Costs." Briefing Schedule for Bill of Costs, dated September 26, 2006. For instance, Abbott has asserted no objection to cost reimbursements sought by Innogenetics for (1) fees of the Clerk (Hanewicz Affidavit,[1] Ex. A); (2) fees for service of summons and subpoena (*Id.*); (3) fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case (Hanewicz Affidavit, Exs. A and B); (4) fees for witnesses (Innogenetics' submitted Bill of Costs at 2); or (5) fees for exemplification (Hanewicz Affidavit, Exs. E and F). As such, these unopposed costs should be taxed to Abbott in the amount of $130,351.31, in accordance with the Plaintiff's Amended Bill of Costs.

---

[1] "Hanewicz Affidavit" refers to the *Affidavit of Christopher G. Hanewicz*, filed September 25, 2006 (Dkt. 376), in support of *Innogenetics' Application to Tax Costs* (Dkt. 374). Innogenetics has retained all invoices and materials and will submit these items should the Court so request.

Abbott does, however, dispute Innogenetics' request for its copy costs and electronic discovery costs, described in the Hanewicz Affidavit, Exs. C, D and G, respectively, and, indeed, requests that this Court deny these costs altogether. Innogenetics maintains that it has submitted a reasonable request for reimbursement of costs relating to the copying of documents necessary for the case and relating to electronic discovery. In fact, Innogenetics, in its first submission, did not request reimbursement for a significant portion of the costs it actually incurred. However, in order to eliminate as many issues of dispute as possible and to provide this Court with all possible information, Innogenetics submits herewith an Amended Bill of Costs and Second Affidavit of Christopher G. Hanewicz.

I.  **INNOGENETICS' COPY COSTS REPRESENT COSTS ACTUALLY INCURRED, ARE REASONABLE AND SUFFICIENTLY DESCRIBED.**

Abbott seeks to expunge itself of *any* responsibility for copy costs, by launching a three-prong attack against discrete entries of Innogenetics' submitted costs in support of its assertion that the entirety of Innogenetics' requested costs should be rejected: (1) Innogenetics did not actually incur the costs submitted; (2) the submitted descriptions are insufficiently detailed; and (3) the copying rates are purportedly unreasonable. Abbott's allegations are unfounded and fall well short of justifying a wholesale exclusion of these costs. However, in order eliminate any question as to the reasonableness of its requests, Innogenetics is submitting an Amended Bill of Costs that removes many of the costs contested by Abbott. *See* Second Hanewicz Affidavit[2], Amended Ex. C.

---

[2] "Second Hanewicz Affidavit" refers to the *Second Affidavit of Christopher G. Hanewicz* submitted herewith.

### A. Innogenetics' Did Not Submit Any Costs That Were Not Actually Incurred

Innogenetics has not sought reimbursement for costs that were not actually incurred. The three errors to which Abbott points are typographical errors in which the amount of the invoices was improperly entered. However, the amount requested for reimbursement, set forth in the column titled "Total Requested Amount," actually reflects the proper requested amount.[3] In the Amended submissions, Innogenetics has corrected these typographical errors. *See* Second Hanewicz Affidavit, Amended Exh. C. In addition, Innogenetics is attaching a copy of the three invoices questioned by Abbott. *See* Second Walkenhorst Decl.[4] at 1 (Invoice Nos. 04-1072, 04-1067 and 04-1144); Abbott Opp. br.[5] at 3. Exhibit C to the Hanewicz Affidavit detailed 345 entries for outside copy costs. Abbott's isolation of three typographical errors is insufficient to "cast doubt upon all of Innogenetics' invoices" (Abbott Opp. br. at 3) and does not meet its burden to set forth "an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (citing *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991)).

### B. Innogenetics Descriptions Are Sufficiently Detailed To Justify Its Copying Requests

Abbott also complains that Innogenetics' descriptions are insufficiently detailed. Yet, despite the extreme difficulty of providing detailed records of all copies made, especially in a

---

[3] As part of a detailed and thorough review of all costs submitted, Innogenetics has now reduced the amount requested for reasons unrelated to those asserted in Abbott's opposition. *See* Second Hanewicz Affidavit, Amended Ex. C.

[4] "Second Walkenhorst Decl." refers to the *Second Declaration of Sarah Walkenhorst* submitted herewith.

[5] "Abbott Opp. br." refers to *Defendant Abbott Laboratories' Objection to Plaintiff's Application to Tax Costs*, filed October 6, 2006 (Dkt. 378).

large, complex patent litigation such as this (notably a case that went to trial less than one year after its inception), Innogenetics was able to submit a detailed, 17-page chart, itemizing its costs incurred for outside copying costs. At some point, however, efforts to gather such information for purposes of reimbursement become overly burdensome, as the expense of gathering the information rises. Indeed, the United States Court of Appeals for the Seventh Circuit has held that a prevailing party is not required "to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess and Surplus Ins. Co. v. Proctor & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Rather, the applicant is "required to provide the best breakdown obtainable from retained records." *Id.*

Innogenetics has now provided all reasonably available detail it could gather and discern regarding its requested copying costs. Innogenetics' charts, detailing its submitted costs, provide sufficient information to enable the Court to review these costs. *See M.T. Bonk Co.*, 945 F.2d at 1410 (citing *State of Illinois v. Sangamo Const. Co.*, 657 F.2d 855, 867 (7th Cir. 1981) (28 U.S.C. § 1920(4) allows for costs related to copying expenses if they are found to be "reasonably necessary" for use in the case)). In the interest of narrowing disputes, Innogenetics has reduced or eliminated various costs as shown in the Second Hanewicz Affidavit, Amended Ex. C. Innogenetics requests are reasonable for a case of this size and complexity.

Abbott criticizes Innogenetics for seeking the recovery of 155,483 pages of "litigation file copies" as "impermissible" or "meaningless." Abbott Opp. br. at 4. But, Abbott alone produced over a half million pages of documents in this litigation. Additionally, in response to Abbott's initial 82 document requests, Innogenetics produced more than 404,000 documents, for a total of 900,000 pages of documents exchanged between the parties. This does not include

4

those documents prepared as trial exhibits, deposition exhibits, expert reports, summary judgment motions and declarations submitted therewith, and the more than 5000 privileged documents that Innogenetics entered on its privilege logs. Moreover, Abbott filed approximately 23 non-post-trial motions in this case, all requiring oppositions and sometimes spawning additional motion practice. *See* Dkt. Nos. 17, 27, 50, 128, 135, 146, 161, 163, 166, 169, 172, 175, 177, 205, 208, 211, 214, 247, 257, 270, 289 and 346. The copy costs submitted are reasonable and were all incurred by Innogenetics to prosecute and defend this complex case.

Abbott additionally questioned why five copies of the certified prosecution history were needed by Innogenetics. Abbott Opp. br. at 5. But the importance of the prosecution file history, as well as its pivotal and necessary role in the defense to Abbott's inequitable conduct allegations, renders the answer obvious. First, Innogenetics needed a copy to review in order to defend against Abbott's unfounded allegations of inequitable conduct. (Hanewicz Affidavit, Ex. C at p. 1, Invoice No. 9137). Innogenetics also had to scan and produce a copy to Abbott. (*Id.* at 2, Invoice No. 04-1052). Innogenetics then used a copy that had been prepared in support of Innogenetics' motion for summary judgment of no inequitable conduct. (*Id.* at 1, Invoice No. 04-1046). Innogenetics used a copy to prepare its witnesses for deposition in Belgium, including Catherine Grosset-Fournier and Ann de Clercq and needed a copy to give to its patent law expert, Mr. Sofocleous. (*Id.* at 2, Invoice No. 04-1067). Finally, Innogenetics maintained one copy in its files for use as needed throughout the litigation. (*Id.* at 2, Invoice No. 04-1234). Given the critical nature of this document and its prevalence throughout the litigation, especially in light of Abbott's inequitable conduct allegations, five copies of the prosecution history is reasonable.

Innogenetics incurred an actual cost of $14,562.03 for in-house copies in this matter. *See* Hanewicz Affidavit, Ex. D. Heller Ehrman tracks in-house copying costs for a specific case by requiring the entry of a specific matter code for each copy job. Thus, all costs referenced in Exhibit D were specifically for *Innogenetics, N.V. v. Abbott Laboratories*. Additionally, by reducing its requested rates to 10 cents per page from the 17 cents per page actually incurred (a reduction of $5,996.13), Innogenetics has reasonably accounted for any copies that the Court might consider unnecessary for purposes of the litigation. Again, Innogenetics is not required to show exactly how each piece of paper was utilized in litigation in order to recover its cost.

Contrary to Abbott's allegations that costs for "blowbacks" and "copies" and "color copies," should not be awarded because these are "vague terms," these terms are well-known, industry terms that are descriptive of the type of copy job requested and thus help describe why one copy request could cost 13 cents per page while another costs 16 cents per page. *See* Bretous Decl.[6], ¶ 4. Additionally, Innogenetics has submitted an Amended Exhibit C, in which costs for such items as "hourly" charges and spiral binding have been removed. Though these charges were also reasonably incurred, in order to eliminate areas of disagreement, Innogenetics is no longer seeking these costs.

### C. The Rates Charged Innogenetics Were Reasonable And, As With All Copy Rates, Vary According To The Copy Request

Abbott's third argument in support of its assertion that Innogenetics' copy costs should be altogether rejected is that Innogenetics' rates for copying costs are excessive. This argument falls completely flat. Courts within the Seventh Circuit have held rates of up to 20 cents per page to be reasonable and have allowed parties to reimbursed for copying costs at such rates.

---

[6] "Bretous Decl." refers to the *Declaration of Emerson Bretous* filed herewith.

*See, e.g., Thomas v. Guardsmark, Inc.*, No. 02 C 8848, 2005 WL 2405823, at *3 (N.D. Ill. Sept. 27, 2005) (holding a rate of $0.15 per page reasonable and noting other cases in which $0.15 per page and between $0.10 and $0.20 per page were held reasonable) (citations omitted); *Fait v. Hummel*, No. 01 C 2771, 2002 WL 31433424, at *5 (N.D. Ill. Oct. 30, 2002) (holding rate of $0.20 per page reasonable) (citations omitted); *see also Thompson v. Eaton Corp.*, No. 02-C-1243-C, 2003 WL 23200258, at *1 (W.D. Wis. May 12, 2003) (applying a rate of $0.14 per page). In addition, the rates for which Innogenetics seeks reimbursement are "reasonable" within the Madison area. As described in the Declaration of Emerson Bretous, rates vary based on the complexity of the copying job. *See* Bretous Decl., ¶ 4. However, even the rate for the most complex jobs falls well within the rates deemed reasonable by district courts within the Seventh Circuit. All the rates submitted by Innogenetics vary from 10.5 cents per page to 16.5 cents per page (for the most complex litigation copy job) – well within the range allotted in the Seventh Circuit.

Based on Innogenetics' amended submissions, Innogenetics requests that this Court tax costs in the amount of $171,179.68 and $8565.90 to reimburse Innogenetics for its reasonable outside and in-house copy costs, respectively.

## II. INNOGENETICS' REQUEST FOR COSTS RELATING TO ELECTRONIC DISCOVERY IS PROPER AND THE COSTS SHOULD BE TAXED.

As discussed in Innogenetics' opening memorandum in support of its application to tax costs, Innogenetics' request for costs relating to electronic discovery are proper based on a discovery-phase agreement between the parties, an agreement Abbott now attempts to disavow. However, Abbott's argument strains logic. If there were no reciprocal agreement from Abbott to produce documents in a searchable .pdf format, why would Innogenetics have incurred the additional costs associated with producing documents to Abbott in this format, allowing Abbott

7

the ability to text-search documents produced by Innogenetics? Even if there were no such agreement, Innogenetics would still be entitled to these costs because they were reasonable and necessary.

None of the cases relied upon by Abbott address the factual circumstance presented here. For instance, Abbott looks to *Equal Employment Opportunity Commission v. Sears, Roebuck and Co.*, 111 F.R.D. 385 (N.D. Ill. 1986) for support, noting that the court in the case denied a party's requests for costs incurred as part of a "computerized revival system." *See* Abbott Opp. br. at 7. However, in *Sears*, a case twenty years old, the court was addressing whether the computerized costs used to perform tasks that would have ordinarily been performed by "an attorney, paralegal or law clerk" should be awarded under § 1920 or as part of an enhanced damages award. *Id.* at 394. The court found that those costs, which saved attorney legal research time, should be reserved and made as part of an enhanced damages award. *Id.* at 395. Likewise, the court in *Northbrook Excess*, a fifteen-year old decision, held that the lower court did not state with sufficient particularity its reasons for allowing the costs for an electronic retrieval system and that these costs saved attorney document review time and were therefore better suited to an enhanced damages award. *See Northbrook Excess*, 924 F.2d at 644 ("The district court's one-sentence comment regarding the data base expense does not permit this court to determine whether the expense was reasonable and necessary under the principles discussed above.").

Moreover, the burden placed on parties as a result of extensive electronic discovery is immense and has increased dramatically since the time of these decisions. *See* Fed. R. Civ. P. 26 (proposed) (addressing electronic discovery). This is especially true in a large, complex litigation in which almost a million documents were produced during discovery and which was tried in less than one year. Moreover, far from being "convenient" or even served six months

before trial, Abbott's production was late, voluminous (totaling more than 500,000 pages) and forced Innogenetics to review the substance of Abbott's documents in the waning months before trial, after its initial expert reports had been filed, and during summary judgment briefing. *See* Second Walkenhorst Decl., Ex. 2 (letter dated March 6, 2006 producing Abbott documents through ABB052975); Ex. 3 (letter dated April 5, 2006 producing Abbott documents through ABB0215005); Ex. 4 (letter dated May 11, 2006 producing Abbott documents through ABB0279951); and Ex. 5 (letter dated June 12, 2006 producing Abbott documents through ABB0506150); *see also* Expert Reports of Howard J. Worman and William S. Reznikoff (4/10/2006) (Dkt. 37 and 38); Abbott's motion for summary judgment (June 2, 2006) (Dkt. 50). Without being able to search Abbott's documents for key words and names, which was made possible by Applied Discovery, Innogenetics could not have possibly reviewed Abbott's production in order to timely proceed through the aggressive discovery schedule and to trial in August. Therefore, the costs submitted from Applied Discovery were reasonable and necessary to the prosecution of this action.[7] *See Third Wave Techs. Inc. v. Stratagene Corp.*, No. 04-C-0680, 2006 WL 517629 at *3 (W.D. Wis. Feb. 21, 2006) (noting that work foisted upon a party at inconvenient times increases the costs of litigation).

In addition, whether such an expense is proper as an item under § 1920, or as a non-taxable expense to be awarded as part of attorney fees, such expense is properly reimbursable and Abbott should not be permitted to evade reimbursement to Innogenetics.[8] Innogenetics'

---

[7] Innogenetics did not submit any of the costs from Applied Discovery that were incurred as part of its own review and production of documents, but will instead reserve those costs as part of its request for enhanced damages under 35 U.S.C. § 285.

[8] *See* footnote 5 of *Innogenetics' Memorandum in Support of Its Application to Tax Costs*, filed September 25, 2006 (dkt. 375).

actual expense for electronic discovery was $175,904.41. *See* Second Walkenhorst Decl., Ex. 6. Thus, Innogenetics' request for reimbursement of $89,250.00 is only slightly over half of the cost it actually incurred in this case.

## CONCLUSION

For the foregoing reasons, Innogenetics respectfully requests that this Court award its costs in at least the amount of $130,351.31, as these costs were not opposed by Abbott. Further, Innogenetics requests an additional award for costs in the amount of $268,995.58 for a total cost award of $399,346.89.

Dated this 16th day of October, 2006.

Attorneys for Innogenetics N.V.

By:  /s/ Shannon M. Bloodworth
John S. Skilton, SBN 1012794
Christopher G. Hanewicz, SBN 1034160
David L. Anstaett, SBN 1037884
Melody K. Glazer, SBN 1054204
Heller Ehrman LLP
One East Main Street, Suite 201
Madison, WI 53703-5118
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

Shannon M. Bloodworth
Heller Ehrman LLP
1717 Rhode Island Ave. NW
Washington, D.C. 20036
Telephone: (202) 912-2000
Facsimile: (202) 912-2020

Colin G. Sandercock
Proskauer Rose LLP
1001 Pennsylvania Avenue NW
Washington D.C. 20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899